June 13, 2019

By ECF Filing
Hon. Judge P. Kevin Castel
United States Courthouse – Courtroom 11D
500 Pearl Street
New York, New York 1007

Re: *Fasulo v. Xtrade Digital Assets, Inc.* (Case No. 19-cv-03741 (PKC))

Dear Judge Castel:

The parties to the above-reference action submit this joint letter pursuant to item 4 of your April 30, 2019 Order. (Dkt. No. 9). **An initial pretrial conference in this case is scheduled for June 18, 2019 at 11:45 a.m.**

### Description Of Case And Bases For Claims (Plaintiffs' Statement)

Plaintiffs' invested into Defendants venture in January 2018, as per an investment contract. Defendants investment contract, referenced their marketing materials, which explained a business plan to provide plaintiffs an opportunity to profit from a cryptocurrency investment scheme. Defendants contract converted unilaterally into financial instruments which were issued to Plaintiffs months after investment. Defendants listed their cryptocurrency for trade on offshore exchanges. As a result, by August of 2018, Plaintiffs instruments had lost 99.5% percent of their value.
Defendant's admittedly marketed their financial instruments as not comprising securities for the sake of regulatory purposes. Plaintiffs claim by virtue of the Defendants record and their marketing materials, that Defendants committed common law Fraud and Securities Fraud 10b(5) by way of knowingly or recklessly marketing securities as non-securities for the purpose of luring plaintiffs into the investment. Plaintiffs also claim rights to rescission of invested funds from defendants due to defendants' issuance of unregistered securities by way of Sections 5, 20(a) of the Securities Act. Plaintiff's also claim that Defendants' listed their securities on an offshore exchange purposefully or with gross negligence and this destroyed the value of the Plaintiff's investment comprising fraud. Finally, defendants' marketing materials included a description of the Defendants' business model generating revenue from making a market in trading crypto-currencies. Defendants took investment from Plaintiffs and later changed their underlying business model by eliminating this source of revenue generation and altering their business model in other fundamental ways. Plaintiffs claims to have relied on this marketed business model as the sole reason Plaintiffs' invested in Defendants business proposal, and thus Defendant's committed 10b(5) fraud in changing the business model without first offering the Plaintiff's a return of their capital. Finally, upon information and belief, following the publicly confirmable transaction ledger of the funds sent by Plaintiffs to the Defendants in January 2018, Defendants continue to hold Plaintiff's funds in the form of crypto currency rather than converting such funds into U.S. dollars for the purposes of running their business. Plaintiffs

allege this constitutes misappropriation of funds as Defendants treat Plaintiff's funds as casino tokens and are gambling with Plaintiff's funds without their consent.

**Description Of Case And Bases For Defenses (Defendants' Statement)**

In January 2018, Plaintiffs entered into contracts for the purchase of tokens to be used as a means of paying for services to be provided by Defendants in connection with a trading platform designed to enable users to take advantage of pricing inefficiencies in the "cryptocurrency" market. The platform is a software application that can be used to execute high-speed trades on multiple cryptocurrency exchanges to take advantage of temporary pricing differentials.

Plaintiffs paid for the tokens in Bitcoin – a relatively well known cryptocurrency. The purchase was made pursuant to a form of agreement known as a Simple Agreement For Future Tokens (a "SAFT"). The terms of the SAFT noted that the instrument is a "security" for purposes of the federal securities laws. In accordance with those laws, Plaintiffs attested to their status as accredited investors and provided Defendants with proof of that status, and Defendants filed with the Securities and Exchange Commission a Form D Notice of Offering of Exempt Securities.

Plaintiffs plead claims of fraud and control person liability under sections 10(b) and 20(a) of the Exchange Act. With respect to these claims, the Complaint fails to satisfy the pleading requirements of Federal Rule 9(b) and the PSLRA. That is so for a number of reasons, including the following: (a) the alleged misstatements consist of forward looking statements and nonactionable statements of opinion, (b) Defendants made specific written disclosure of the risks as to which Plaintiffs claim to have been misled, negating any inference of scienter or reasonable reliance, and (c) Plaintiffs' theory of loss causation is implausible. Starting in January 2018, the cryptocurrency market as a whole crashed, resulting in a peak-to-trough decline exceeding the decline after the dot-com bubble burst in 2000.[1]

Plaintiffs also plead claims for violation of sections 5 and 15 of the Securities Act based on Defendants having not registered the token-sale transactions with the SEC. These claims too are subject to dismissal. Additionally, the Complaint fails to plead compliance with a statutory one-year limitations period. It also fails to plead facts necessary to establish entitlement to rescission under section 12(a)(2), namely – Plaintiffs' ownership and tendering of the tokens. Plaintiffs are accredited investors who purchased SAFTs pursuant to Regulation D, which exempts certain private securities transactions from Section 5 registration.

**Plaintiffs' Contemplated Motions (Plaintiffs' Statement)**

None.

---

[1] See https://www.bloomberg.com/news/articles/2018-09-12/crypto-s-crash-just-surpassed-dot-com-levels-as-losses-reach-80.

**Defendants' Contemplated Motions (Defendants' Statement)**

At this time, Defendants contemplate making the following three motions:

1. A motion to strike certain allegations contained in the Complaint relating to conduct and statements made by Defendants during compromise negotiations. The bases for that anticipated motion are set forth in a June 10, 2016 pre-motion letter to the Court. (Dkt. No. 16);

2. A motion to dismiss the Complaint for failure to state a claim. An explanation of the bases for that anticipated motion will be set forth in a pre-motion letter to the Court, which will be filed on or before July 28, 2019 – the date by which Defendants are to Answer or otherwise respond to the Complaint per Defendants Waiver of Service. (Dkt. No. 8);

3. If necessary, a motion for a protective order staying discovery during the pendency of Defendants' motion to dismiss. "The Private Securities Litigation Reform Act ("PSLRA") mandates that 'all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss [a complaint brought under the 1933 Securities Act or the 1934 Exchange Act], *unless* the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or *to prevent undue prejudice* to that party.'" *In re Initial Public Offering Sec. Litig.*, 236 F.Supp.2d 286 (S.D.N.Y. 2002) (Scheindlin, J) (emphasis and brackets in original). To date, Plaintiffs have refused to incorporate a stay of discovery into a jointly proposed Case Management Plan to be submitted by the parties at the upcoming initial pretrial conference. (Dkt. No. 9). Defendants anticipate moving for a protective order if Plaintiffs seek discovery, other than Rule 26(a)(1) disclosures, during the pendency of their motion to dismiss.

**Prospect of Settlement (Joint Statement)**

This case is not likely to settle prior to a ruling on Defendants' contemplated motion to dismiss.

Respectfully submitted,

KAGEN & CASPERSEN PLLC                    KIRSH LLC

By: _____               By: _____
Joel M. Taylor, Esq.                       Zeev Kirsh, Esq.
Stuart Kagen, Esq.                         347 West 57th Street, No. 31a
757 Third Avenue, 20th Floor               New York, NY  10019
New York, NY  10017                        *Attorneys for Plaintiffs*
*Attorneys for Defendants*