**KAGEN & CASPERSEN PLLC**
ATTORNEYS ADMITTED IN NEW YORK, NEW JERSEY AND CALIFORNIA

757 THIRD AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10017
(212) 880-2045
(646) 304-7879 (FACSIMILE)

June 28, 2019

By ECF Filing
Hon. Judge P. Kevin Castel
United States Courthouse – Courtroom 11D
500 Pearl Street
New York, New York 1007

Re:   *Fasulo v. Xtrade Digital Assets, Inc.* (Case No. 19-cv-03741 (PKC))

Dear Judge Castel:

I am counsel for Defendants in the above-referenced action and write pursuant to Individual Practice Rule 3(A) to set forth the factual and legal basis of an anticipated motion to dismiss Plaintiffs' Amended Complaint. (Dkt. No. 12). **A preliminary conference is not presently scheduled in this action.**

Background
In January 2018, Plaintiffs purchased from Defendant XTrade Digital Holdings ("XDH") security instruments known as SAFTs, or a Simple Agreement for Future Tokens. The SAFTs granted Plaintiffs the right to receive tokens to be used to pay for services provided in connection with a cryptocurrency trading platform being developed by Defendants. The anticipated functionality of the platform was described in a white paper provided to Plaintiffs (the "White Paper"). Starting in January 2018, the cryptocurrency market as a whole crashed, resulting in a peak-to-trough decline exceeding the decline that occurred after the dot-com bubble burst in 2000.

The Amended Complaint
Plaintiffs' Amended Complaint asserts seven causes of action. In counts First and Fourth, they assert claims for alleged violations of section 5 of the Securities Act. In count Second, they assert a claim for alleged violation of Section 10(b) of the Exchange Act. In counts Third and Fifth, they assert claims for control person liability based on the alleged violations of section 5 and section 10(b). In count Sixth, they assert a claim for common law fraud. Count Seven seeks a restraining order.

For the following reasons, Defendants anticipate moving to dismiss each of the seven counts asserted by Plaintiffs.

Section 5 Claims. Count First, titled "Failure to Comply with Regulation D", does not assert a cause of action but instead alleges facts apparently aimed at refuting a potential affirmative defense. On that basis, it is subject to dismissal for failure to state a claim.

Count Fourth (and count First, to the extent it states a distinct cause of action) is subject to dismissal for the following reasons:

*First*, the Amended Complaint fails to plead facts sufficient to demonstrate conformity with the one-year statute of limitations governing a section 5 claim.

*Second*, the Amended Complaint fails to adequately allege that the tokens – as distinct from the SAFTs – are securities. A transaction does not constitute a "security" if a purchaser is motivated by a desire to use or consume the item purchased. The Amended Complaint alleges (at ¶58) that the "whole reason" Plaintiffs purchased the tokens was to use them to pay for Defendants' service.

*Third*, the Amended Complaint fails to plead facts entitling Plaintiffs to relief under Section 12(a) of the Security Act. Section 12 authorizes two types of mutually-exclusive recovery. If the plaintiff owned the security when the complaint was filed, Section 12 authorizes rescission – the plaintiff returns the security to the defendant and the defendant refunds the plaintiff the purchase price with adjustments for interest and income. If the plaintiff no longer owned the security when the complaint was filed, Section 12(a)(2) permits the plaintiff to recover damages. The Amended Complaint does not allege either that: (a) Plaintiffs owned and tendered their tokens to Defendants, or that (b) Plaintiffs no longer owned the tokens and sold the tokens for a loss.

*Fourth*, the Amended Complaint fails to allege facts sufficient to establish that liability extends to any Defendant other than XDH, the offeror and issuer of the tokens. Section 12(1) extends liability only to parties who pass title to a security or who offer a security for sale.

Section 10 Claim. The Amended Complaint fails to plead the elements of a section 10 claim with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. Each alleged violation of section 10 is addressed in turn below:

The Amended Complaint alleges that Defendants made misrepresentations and omissions relating to the trading platform. See ¶¶ 59-72. Those allegations do not state a claim for the following reasons:

- The statements on which the claim rests are protected by the bespeaks caution doctrine and by the safe harbor provision of the PSLRA. The SAFTs and the White Paper contain meaningful cautionary statements notifying Plaintiffs of risks associated with the deployment of the trading platform. For instance, a risk disclosure contained in the SAFTs states:

    The Company may fail to deploy the Platform

    Development of the Platform is in its early stages and a production version has yet to be launched. The company will be relying on the proceeds of its SAFT sale to develop all required software, including,

but not limited to the Platform's client software, user interfaces and apps, network infrastructure, and software required for third-party wallets. Additionally, the Company will have to successfully carry out a Network Launch and deploy the Platform, as well as facilitate it growth to a large scale. There is no guarantee that the Company will obtain sufficient funding to fully develop the Platform or that even if fully developed, the Platform will scale following a Network Launch.

- The Amended Complaint does not allege that Defendants knew that the alleged misrepresentations and omissions regarding the platform were false. The alleged shortcomings of the platform are more plausibly explained as having resulted from the crash in the crypto currency market in 2018 and from non-culpable business decisions made by Defendants. Defendants' disclosure of the risk that the platform may not be deployed negates any inference that Defendants acted with an intent to deceive.

- The Amended Complaint does not adequately allege that any supposed misrepresentation or omission relating to the platform concealed something from the market that, when disclosed, negatively affected the value of the tokens. The 2018 crash of the crypto currency market is a more plausible explanation of any loss in value of the tokens.

The Amended Complaint also alleges that Defendants made misrepresentations and omissions relating to the tokens' supposed status as a security and the necessity of registration with the SEC. See ¶¶ 68 & 84. Those allegations fail to state a claim for the following reasons:

- The alleged misrepresentations and omissions concerning the tokens' supposed status as a security and the necessity of registration are non-actionable statements of law and/or opinion.

- Defendants expressly disclosed the risk that the tokens may be deemed to securities that need to be registered. For instance, a risk disclosure contained in the SAFTs states:

> The regulatory status of tokens, distributed ledger blockchain technologies, token offerings such as this, cryptocurrencies, and cryptocurrency exchanges currently is unclear or unsettled in many jurisdictions. It is difficult to predict how or whether regulatory agencies may apply existing regulation with respect to such technology and its applications, including the Platform and the Tokens. It is likewise difficult to predict how or whether legislatures or regulatory agencies may implement changes to law and regulation affecting distributed ledger technology and its applications, including the platform and the Tokens. Regulatory actions could negatively impact the Platform and the Tokens in various ways, including, for purposes of illustration only, through a determination that the Tokens

are regulated financial instruments that requires registration or licensing. The Company may cease operations in a jurisdiction in the event that regulatory actions, or changes to law or regulation, make it illegal to operate in such jurisdiction. Failure by the Company, the or certain users of the Platform to comply with any laws, rules and regulations, some of which may not exist yet or are subject to interpretation and may be subject to change, could result in a variety of adverse consequences, including civil penalties and fines."

Such disclosure negates any inference that Defendants acted with any intent to deceive. Any misstatement regarding the tokens' alleged status as a security and/or the necessity of registration is more plausibly explained as reflecting a good faith understanding of the law rather than an intent to deceive.

- The Amended Complaint does not allege that Plaintiffs made their investment decision in reliance upon any alleged misrepresentation or omission relating to the tokens supposed status as a security or the necessity of registration. Any such reliance would be unreasonable in light of the aforementioned risk disclosure.

- The Amended Complaint does not allege that any supposed misrepresentation or omission relating to the tokens' supposed status as a security or the necessity of registration concealed something from the market that, when disclosed, negatively affected the value of the tokens. The 2018 crash of the crypto currency market is a more plausible explanation of any loss in value of the tokens.

The Amended Complaint also alleges (at ¶¶ 60-61) that Defendants misrepresented that Xtrade would "employ legal and compliance teams to ensure regulatory compliance and proactively engage with regulators". This alleged statement is not actionable for the following reasons:

- The statement is not one of existing fact but rather of future intent.

- The statement is in the nature of non-actionable puffery.

- The Amended Complaint does not allege that any supposed misrepresentation or omission relating to Defendants' intent to comply with regulatory requirements concealed something from the market that, when disclosed, negatively affected the value of the tokens. The 2018 crash of the crypto currency market is a more plausible explanation of any loss in value of the tokens.

The AC also alleges (at ¶83) that Defendants made misrepresentations regarding Kravet's background and in particular that it falsely represented that he had "successfully launched certain deals". This allegation does not state a claim for the following reasons:

- It does not identify the deals as to which the alleged representation was supposedly false or explain why the statement was untrue or material.

- The Amended Complaint does not allege that Plaintiffs made their investment decision in reliance upon the supposed representation.

- The Amended Complaint does not allege that any supposed misrepresentation regarding Kravets' background, when disclosed, negatively affected the value of the tokens. The 2018 crash of the crypto currency market is a more plausible explanation of any loss in value of the tokens.

Control Person Claims. Counts Third and Fifth, which assert claims for control person liability, are subject to dismissal for the following reasons:

*First*, there can be no secondary liability under section 15 of the Securities Act or under section 20 of the Exchange Act if there is no primary violation under sections 5 and 10, respectively.

*Second*, the Amended Complaint fails to allege particularized facts of the individual defendants' culpable participation in the alleged underlying violations.

*Third*, a claim of control person liability cannot be stated where, as in the Amended Complaint, it is alleged that the controlling person is the primary violator of the underlying statute.

*Fourth*, the Amended Complaint fails to allege, with respect to either the section 15 or section 20 claim, facts that would establish that each of the individual defendants exercised actual control over either of the corporate defendants. It makes only the conclusory allegation (¶¶ 107 & 120) that "by virtue of their offices, stock ownership, agency, agreements or understandings, specific acts, and for any other reason, were, at the time of the wrongs alleged, herein, control persons."

Common Law Fraud. Count Fifth should be dismissed for the same reasons as count Second.

Restraining Order. Count Sixth is subject to dismissal because injunctions are remedies not causes of action.

Respectfully submitted,

Joel M. Taylor