**KAGEN & CASPERSEN PLLC**
ATTORNEYS ADMITTED IN NEW YORK, NEW JERSEY AND CALIFORNIA

757 THIRD AVENUE, 20ᵀᴴ FLOOR
NEW YORK, NEW YORK 10017
(212) 880-2045
(646) 304-7879 (FACSIMILE)

July 26, 2019

By ECF Filing
Hon. Judge P. Kevin Castel
United States Courthouse – Courtroom 11D
500 Pearl Street
New York, New York 1007

     Re:    *Fasulo v. Xtrade Digital Assets, Inc.* (Case No. 19-cv-03741 (PKC))

Dear Judge Castel:

I am counsel for Defendants in the above-referenced action and write pursuant to Individual Practice Rule 3(A)(i) to set forth the factual and legal basis of an anticipated motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"). (Dkt. No. 12). **A preliminary conference is not presently scheduled in this action.**

I previously submitted a pre-motion letter, dated June 28, 2019, setting out the basis for an anticipated motion to dismiss Plaintiffs' first Amended Complaint. (Dkt. No. 23). In response to that letter, Plaintiffs elected to amend their pleading and filed the SAC on July 12, 2019. (Dkt. No. 25). Among other changes, the SAC (i) does not include two previously pled causes of action, (ii) asserts for the first time a violation of Section 5(c) of the Securities Act, and (iii) alleges new theories of loss causation and liability under Section 10(b) of the Exchange Act. Reflecting the extent of revision, the SAC (42 pages in length) is twice as long as the Amended Complaint. As set forth below, Plaintiffs' SAC still fails to state a plausible claim.

Background. In January 2018, Plaintiffs purchased from Defendant XTrade Digital Holdings ("XDH") security instruments known as a Simple Agreement For Future Tokens, or SAFT. The SAFTs granted Plaintiffs the right to receive digital tokens to be used to pay for services provided in connection with a cryptocurrency trading platform being developed by Defendants. The anticipated functionality of the platform was described in a white paper given to Plaintiffs before they purchased the SAFTs (the "White Paper"). Starting in January 2018, the cryptocurrency market as a whole crashed, resulting in an eighty percent peak-to-trough decline, exceeding the decline that occurred after the dot-com bubble burst in 2000.

The SAC
The SAC asserts five causes of action. Count I asserts a claim for violation of Section

10(b) of the Exchange Act.  Count III asserts a claim, pursuant to Section 12 of the Securities Act, for violation of Section 5 thereof.  Counts II and IV assert claims for control person liability based on the alleged violations of sections 10(b) and 5.  Count V asserts a claim for common law fraud.

Defendants anticipate moving to dismiss each of the five Counts asserted in the SAC on the bases set forth below.

All Claims.  Plaintiffs lack standing to sue because they neither: (a) sold the tokens at a loss, nor (b) retained ownership of the tokens.  Plaintiffs were acting as undisclosed "syndicators" – that is, unregistered broker-dealers.  They purchased the tokens from XDH on behalf of third parties to whom Plaintiffs subsequently distributed the tokens.

All Securities Law Claims.  Each of Plaintiffs claims asserted under the federal securities laws fail to state a claim because the tokens are not securities.  That is so for two reasons.  *First*, because the tokens are "currency", a form of financial instrument that is expressly excluded from the definition of "securities" under the federal securities laws.  *Second*, because the tokens are not "investment contracts" under the *Howey* test because Plaintiffs purchased the tokens for the purpose of accessing and purchasing services on Xtrade's trading platform.

Section 10 Claim.  The SAC fails to plead the elements of a Section 10 claim with sufficient particularity to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA.  Each alleged violation is addressed in turn below.

The SAC alleges that Defendants made false statements relating to Xtrade's alleged plans to act as a market maker for cryptocurrencies.  This allegation fails to state a claim for the following reasons:

- The statements fall within the PSLRA safe harbor for forward looking statements because (i) the SAFTs contain meaningful cautionary statements notifying Plaintiffs of the risk they allege materialized – that is, Xtrade's alleged decision not to act as a market maker, and because (ii) the SAC fails to adequately allege that Defendants had actual knowledge of the supposed falsity of the statements.

- The SAC does not adequately plead scienter and the SAFT risk disclosures negate any inference that Defendants acted with an intent to deceive.  Xtrade's decision not to act as a market maker is more plausibly explained as resulting from a non-culpable business decision.

- The SAC does not plausibly allege that Plaintiffs' alleged losses were caused by Xtrade's decision not to act as a market maker, rather than the collapse of the cryptocurrency market or other causes.

The SAC alleges that Defendants made false statements relating to Xtrade's alleged plans to offer the tokens for sale to the U.S. general public.  This allegation fails to state a claim for the following reasons:

- The statements fall within the PSLRA safe harbor for forward looking statements because (i) the White Paper and SAFTs contain meaningful cautionary statements notifying Plaintiffs of the risk that they allege materialized – that is, a decision not to sell tokens to the U.S. general public, and because (ii) the SAC fails to adequately allege that Defendants had actual knowledge of the supposed falsity of the statements.

- The SAC does not adequately plead scienter and the risk disclosures contained in the White Paper and SAFTs negate any inference that Defendants acted with an intent to deceive. Any decision not to sell tokens to the U.S. general public is more plausibly explained as resulting from a non-culpable business decision.

- The SAC does not plausibly allege that Plaintiffs' alleged losses were caused by a decision not to sell tokens to the U.S. general public, rather than the collapse of the cryptocurrency market or other causes.

The SAC alleges that Defendants made false statements regarding Xtrade's plans to comply with the securities laws. This allegation fails to state a claim for the following reasons:

- The statements fall within the PSLRA safe harbor for forward looking statements because (i) the SAFTs contain meaningful cautionary statements notifying Plaintiffs of the risk that they allege materialized – that is, regulatory action allegedly having a negative impact on Xtrade's business plans, and because (ii) the SAC fails to adequately allege that Defendants had actual knowledge of the supposed falsity of the statements.

- The SAC fails to adequately plead scienter. Indeed this allegation is contradicted by Plaintiffs' allegations that Defendants decided not to act as a market maker and not to sell tokens to the general U.S. public in order not to violate the securities laws. Any failure to comply with the securities laws is more plausibly explained by non-culpable legal judgments.

- The SAC does not plausibly allege that the statements regarding Xtrade's plans to comply with the securities laws concealed a risk that, when disclosed, negatively affected the value of the tokens, or that Plaintiffs' alleged losses resulted from that risk rather than from the collapse of the cryptocurrency market or other causes.

The SAC alleges that Defendants falsely represented that the tokens would not be securities. This allegation fails to state a claim for the following reasons:

- The statements fall within the PSLRA safe harbor for forward looking statements because (i) the SAFTs contain meaningful cautionary statements notifying Plaintiffs of the risk that they allege materialized – that is, the tokens may be deemed to be securities, and because (ii) the SAC fails to adequately allege that Defendants had actual knowledge of the supposed falsity of the statements.

- The statements are non-actionable statements of opinion and law, not fact.

- Plaintiffs could not have reasonably relied upon the statements in light of (i) the cautionary statements contained in the SAFTs, (ii) public statements made by the SEC regarding cryptocurrencies, and (iii) the legal nature of the statements.

- The SAC does not plausibly allege that the statements concealed a risk that, when disclosed, negatively affected the value of the tokens, or that Plaintiffs' alleged losses resulted from that risk rather than from the collapse of the cryptocurrency market or other causes.

The SAC alleges that Defendants failed to disclose that the tokens might be listed for sale on a foreign exchange. This alleged omission is not actionable for the following reasons:

- The SAC does not adequately allege scienter. Indeed, the White Paper does disclose the possibility that the tokens could trade on a secondary market.

- The SAC does not adequately allege that Defendants caused the tokens to be listed for sale on a foreign exchange or that it planned to do so when Plaintiffs purchased the tokens.

- The SAC does not plausibly allege that Plaintiffs' alleged losses were caused by the listing of the tokens on a foreign exchange, rather than the collapse of the cryptocurrency market or other causes.

The SAC alleges that defendants made a number of other alleged misrepresentations and omissions. None adequately allege scienter or a plausible theory of causation.

Section 5 Claim. Plaintiffs' Section 5 claim is barred by a one-year statute of limitations. As pled in the SAC, the tokens were offered and sold to Plaintiffs in January 2018, more than one year before Plaintiffs commenced this action by filing their initial complaint on April 26, 2019. The SAC also fails to unambiguously elect a remedy – rescission or damages – as required to plead a claim under Section 12, which creates a private right of action for violations of Section 5.

Control Person Claims. Plaintiffs' control person claims fail because, for the reasons discussed, there are no underlying violations of Sections 5 and 10.

Common Law Fraud. Plaintiffs' common law fraud claim fails for the same reasons as its Section 10 claim.

Under Individual Practice Rule 3(A)(iv) Plaintiffs are to file a response to this letter within four business days – that is, by August 1, 2019. If Plaintiffs elect to stand on the SAC, rather than seek leave to further amend their pleading, Defendants respectfully request that the Court enter an order setting the following briefing schedule for Defendants' motion to dismiss the SAC: Defendants' moving papers to be filed by **August 22, 2019**; Plaintiffs' opposition

papers to be filed on **September 12, 2019**; Defendants' reply papers to be filed on **September 26, 2019**.

Respectfully submitted,

Joel M. Taylor