UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANTHONY FASULO and GAUTAM DESAI,

                Plaintiffs,                              Case No. 19-cv-03741 (PKC)

vs.

XTRADE DIGITAL ASSETS INC., XTRADE DIGITAL
HOLDINGS, ALEXANDER KRAVETS, SERGII
GULKO, and JON GIACOBBE

                Defendants.
-----------------------------------------------------------------------X

## DECLARATION OF STEVEN S. MCNEW

I, Steven S. McNew, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

Dated: _8-22-19_
         August 22, 2019

                                              By: _____
                                                   Steven S. McNew



AUGUST 22, 2019

# *ANTHONY FASULO AND GAUTAM DESAL*
# *VS.*
# *XTRADE DIGITAL ASSETS INC., XTRADE DIGITAL HOLDINGS, ALEXANDER KRAVETS, SERGII GULKO, AND JON GIACOBBE*

EXPERT REPORT

PREPARED BY
STEVEN S. MCNEW
SENIOR MANAGING DIRECTOR
BLOCKCHAIN, INFORMATION GOVERNANCE, PRIVACY & SECURITY
1301 MCKINNEY, SUITE 3500
HOUSTON, TX, 77002

PREPARED FOR
KAGEN & CASPERSEN ON BEHALF OF
XTRADE DIGITAL ASSETS, INC.

EXPERTS WITH **IMPACT**™



# Table of Contents

**QUALIFICATIONS AND STATEMENT OF COMPENSATION** ....................................................................3

**AN ANALYSIS OF DISTRIBUTION OF TOKENS** ..........................................................................................3

    I.    A DISCUSSION OF BLOCKCHAIN, ETHEREUM, AND ERC-20 TOKENS ................................3
    II.   INTRODUCTION ................................................................................................................5
    III.  SYNDICATION AND BLOCKCHAIN TECHNOLOGY ..........................................................5
    IV.  METHODOLOGY AND ANALYSIS ....................................................................................6
    V.   CONCLUSION....................................................................................................................7



## QUALIFICATIONS AND STATEMENT OF COMPENSATION

As requested by Kagen & Caspersen, I have prepared the following report regarding the analysis of two diagrams provided to me by Kagen & Caspersen. The first file attached to this report as Exhibit 1 is titled "Gautam Desai", and the second file attached to this report as Exhibit 2 is titled "Anthony Fasulo".

I, Steven S. McNew, am a Senior Managing Director and Blockchain & Cryptocurrency leader at FTI Consulting Technology LLC ("FTI") in the Blockchain, Information Governance, Privacy and Security practice of its Technology Segment. FTI's Technology Segment provides Blockchain advisory services, cryptocurrency investigations, digital investigation and electronic discovery services to assist organizations across a variety of industries to better govern, secure, find, and analyze information.

I completed blockchain and cryptocurrency coursework at Massachusetts Institute of Technology (MIT). I have also completed studies and passed the required examinations with the Blockchain Council to earn designations of Certified Bitcoin Expert, Certified Blockchain Expert, and Certified Smart Contracts Developer. Additionally, I am certified by CipherTrace as a Cryptocurrency Investigator and a member of the Wall Street Blockchain Alliance. I have thirty-two (32) years of experience performing various forensic, information management, and cybersecurity investigations. I am a frequent speaker on blockchain, cryptocurrency, and cybersecurity. I have also published numerous articles on blockchain, cryptocurrency, and cybersecurity topics.

A copy of my curriculum vitae is attached as Exhibit 3.

All of my opinions and conclusions presented in this Report are held to a reasonable degree of professional certainty.  I have prepared my Report while employed by FTI Consulting.  FTI is being compensated at a rate of $500.00 per hour for my time.  FTI's fee is not contingent on the outcome of this case.

## AN ANALYSIS OF DISTRIBUTION OF TOKENS

I. A DISCUSSION OF BLOCKCHAIN, ETHEREUM, AND ERC-20 TOKENS

Blockchain, Ethereum, and tokens are a relatively new phenomenon. To facilitate understanding of the opinions expressed herein, a brief introduction to blockchain, Ethereum, and tokens is helpful.



Blockchain technology is a series of records known as "blocks" which utilize cryptographic hashes of each prior block, transaction data, and a time stamp to track the blocks and transactions in a distributed ledger, allowing for secure transactions of data.[1]  The distributed ledger means that anyone with a computer and an internet connection, whether an individual or an institution, who is provided access to the ledger can replicate and copy the record of blockchain transactions independent of anyone else maintaining the ledger.  Thus, the transfer of blockchains are tracked across international boundaries and publicly available for verification of all transactions. Because the block data cannot be altered without changing the hash value, the contents of a file are processed through a cryptographic algorithm, and a unique numerical value – the hash value - is produced that identifies the contents of the file. If the contents are modified in any way, the value of the hash will also change significantly.

Ethereum is an open-source blockchain software platform allowing for the decentralized creation and distribution of blockchain products, including the popular cryptocurrency Ether, and various forms of tokens and other smart contracts.

One such application of the Ethereum blockchain is the ERC-20 token. ERC-20 is simply the name for the standard requirements for anyone wishing to introduce a new token onto the Ethereum blockchain. ERC stands for Ethereum Request for Comments and the number 20 is the number assigned to the rule.

Introduced in late 2015, the primary reason that ERC-20 exists is to ensure that Ethereum-based tokens perform in a predictable way throughout the ecosystem, such that decentralized applications and smart contracts are interoperable across the platform, and that all tokens follow a fixed standard of security so that everything works harmoniously in the system.

Similar to Bitcoin and Ether, Ethereum tokens, or ERC-20 tokens, are also tracked on the blockchain, which is the public ledger of all transactions that have occurred.

---

[1] Narayanan, Arvind; Bonneau, Joseph; Felten, Edward; Miller, Andrew; Goldfeder, Steven (2016). Bitcoin and cryptocurrency technologies: a comprehensive introduction. Princeton: Princeton University Press. ISBN 978-0-691-17169-2



## II.   INTRODUCTION

I have been asked to perform analysis of two diagrams provided to me by Kagen & Caspersen. The first diagram is attached to this report as Exhibit 1 and is titled "Gautam Desai", The second diagram is attached to this report as Exhibit 2 and is titled "Anthony Fasulo".

My understanding is that these diagrams were prepared by the Defendant(s). I was instructed to assume that account number 0x49fbb03d63d6bf5277048b084e49f0d7b85900d6 is the initial account to which Xtrade transferred tokens to Desai ("Desai initial account"), and that account number 0x93c2D261f937eD79572F2474A96d5635C2D9f0FD is the initial account to which Xtrade transferred tokens to Fasulo ("Fasulo initial account"). The diagrams also show numerous transfers of tokens from the Desai initial account and Fasulo initial account to a large number of other wallets ("accounts").

Accordingly, based on information that resides on a publicly-available transaction ledger, my goal was to examine each Ethereum address in order to determine the accuracy of the distribution of tokens as detailed in Exhibit 1 and Exhibit 2.  As the result of my analysis of the transactional history and behaviors, I have reached several conclusions about these diagrams, which are stated and discussed in more detail below.

My opinions, which are rendered to a reasonable degree of professional certainty, are as follows:

**Opinion No. 1:** The Ethereum addresses are accurately reflected in Exhibits 1 and 2.

**Opinion No. 2** The Ethereum transactions, as depicted in the two diagrams, contain proper transaction dates and times for each transaction.

**Opinion No. 3:**  The Ethereum transactions, as depicted, accurately represent the distribution of tokens.

**Opinion No. 4**: The Ethereum transactions and distribution of tokens from the Desai initial account and the Fasulo initial account, followed by numerous transfers of those tokens to a significant number of other accounts, is representative of the typical behavioral patterns of a syndication.

## III.   SYNDICATION AND BLOCKCHAIN TECHNOLOGY

Syndication is the grouping of investors into a transaction, sometimes referred to as Venture Capital Syndication. Instead of taking on a whole round oneself, a lead investor shares in their deal with other investors.  For example, a lead investor finds and performs due diligence the investment opportunity, negotiates the investment terms and keeps backers informed about the progress of the investment. Backers link up to experienced investors, commit to investing on the same terms as the lead, and pay a



carry of between 5-20% per deal to the lead. By linking up, backers increase the total investment amount, gain major investment rights, and access more deals.

While the idea of syndication is nothing new, syndications themselves have evolved through the use of blockchain technology. In a typical Ethereum blockchain syndication where tokens are used, one would expect to see lead investors receive tokens, and then distribute them to other investors that are brought into the arrangement, while keeping a percentage of the carry.

IV.   METHODOLOGY AND ANALYSIS

In order to analyze the diagrams, Exhibit 1 and Exhibit 2, which are the focus of this report, I used forensic tools to examine the blockchain records associated with each of the diagrams that I was provided. There are numerous software tools available to review, search, and analyze transactions on the blockchain. The leading software applications include CipherTrace and Chainalysis. These are broadly recognized as acceptable software for forensic analysis of the blockchain and various forms of cryptocurrency, including Bitcoin, Ether, and ERC-20 tokens. For my investigation, I used CipherTrace, of which I am a Certified Cryptocurrency Investigator. I also relied on blockchain and transaction data publicly available at Etherscan, which is an Ethereum blockchain explorer that maintains transaction information for Ether and ERC-20 tokens, such as the ones that are included in diagrams from Exhibit 1 and Exhibit 2.

To validate the accuracy of the information contained in Exhibit 1 and Exhibit 2, the following actions were taken:

1) Using the tools referenced above, I analyzed each Ethereum address provided. My analysis included review of information including transaction history, number of transactions received, number of transactions sent, date/time of each transaction, transaction ID, and sent address.

2) Using the information gathered from my analysis, I compared my findings to each of the transactions included in Exhibit 1 and Exhibit 2 in order to identify any discrepancies.

In my review and analysis of the data tracked and maintained on the blockchain, I was able to confirm each Ethereum address shown in the diagrams as being legitimate and recognized addresses. I was also able to confirm that the date and time stamps were the same in the blockchain as they are depicted in the diagrams.



In addition to utilizing the Ethereum address to confirm transactions, I was able to also verify that transaction history in Exhibits 1 and 2 are consistent with blockchain transactions, which record the transfer of tokens.

Based on the foregoing, it is my opinion that the diagrams attached here as Exhibit 1 and Exhibit 2 are a truthful and accurate representation of the distribution of tokens related to the Desai initial account and the Fasulo initial account.

## V.  CONCLUSION

My opinions, which are rendered to a reasonable degree of professional certainty, are as follows:

**Opinion No. 1:**  The Ethereum addresses are accurately reflected in Exhibits 1 and 2.

**Opinion No. 2:**  The Ethereum transactions, as depicted in the two diagrams, contain proper transaction dates and times for each transaction.

**Opinion No. 3:**  The Ethereum transactions, as depicted, accurately represent the distribution of tokens.

**Opinion No. 4**: The Ethereum transactions and distribution of tokens from the Desai initial account and the Fasulo initial account, followed by numerous transfers of those tokens to a significant number of other accounts, is representative of the typical behavioral patterns of a syndication.

The foregoing opinions are stated to a reasonable degree of professional certainty, based on the information that was made available to me as of the date of this report.  I reserve the right to supplement and/or amend this report and my opinions in the event that additional information becomes available.

Steven S. McNew

# Exhibit 1: Gautam Desai



# Exhibit 2: Anthony Fasulo



# Exhibit 3

# Steven S. McNew

## Senior Managing Director - Technology

steve.mcnew@fticonsulting.com



**1301 McKinney**

**Suite 3500**

**Houston, TX 77002**

Tel: 1 713 353 5404

Tel: 1 936 232 9994

**CERTIFICATIONS**

Certified Bitcoin Expert, Blockchain Council (CBIE)

Certified Smart Contracts Developer, Blockchain Council

Certified Blockchain Expert, Blockchain Council (CBE)

Certified Expert Cryptocurrency Investigator, CipherTrace

Registered Private Investigator, Texas

**EDUCATION**

Business Management and Computer Sciences, Northern Kentucky University

Blockchain and Cryptocurrency Executive Education Certificate, Massachusetts Institute of Technology (MIT)

Steven S. McNew is a Senior Managing Director of the Blockchain Advisory and Cryptocurrency Disputes, Investigations and Litigation practice of the Technology segment. Mr. McNew is an expert in blockchain, cryptocurrency, information and data security, complex discovery, and digital forensics and for 31 years has applied this expertise by leading thousands of engagements for corporate and law firm clients globally, across numerous industries.

Prior to joining FTI Consulting, Mr. McNew held leadership positions with several legal and technology consulting firms, including Navigant Consulting and Huron Consulting Group.

**Professional Experience**

Mr. McNew has led investigations into disputes involving blockchain and various forms of cryptocurrency as well as blockchain assessment engagements, pilot projects and software selection and implementation. A few notable projects include:

- Performed extensive asset tracing to identify origination of funds to known terrorist group and to identify entrance/exit of cryptocurrencies to known U.S. based exchanges.
- Retained to assess reasonableness of the classification of cryptocurrency for insurance claims payment. Provide expert reports which will likely lead to testimony.
- Retained to design and implement blockchain solution for end-to-end product tracking of oil transport via railcar from Canada to the Gulf of Mexico. Effort includes design and audit of blockchain solution, devising approach to contracts, writing and implementing smart contracts and off-chain payments.
- Retained to investigate alleged theft of Bitcoin, analyze behavioral patterns of the movement of cryptocurrency to determine if the movement is consistent with known patterns of fraudulent behavior, and develop various forensic reports.
- Retained to investigate alleged theft and/or improper use of Bitcoin and Ether payments by performing asset tracing and forensic analysis. Prepare various written forensic reports detailing the investigative findings.
- Provided extensive forensic collection, analysis, reporting, and advisory services related to potential spoliation claims arising from a litigation involving a commodities investments organization. When faced with the potential loss of relevant data due to possible, inadvertent destruction, Mr. McNew was engaged by outside counsel and the company to conduct an analysis of hundreds of previously collected evidence items, previously produced records and the company's current data store to build a potential gap analysis. Efforts enabled counsel to defend previous preservation efforts and draw relevant data from previous collections.



**Steve McNew**
**Senior Managing Director – Technology Segment**

Mr. McNew regularly presents at industry events on best practices for blockchain, e-discovery, data security and information governance.

**Blockchain and Cryptocurrency Testimony/Expert Witness**

- Expert Report – Investigative Findings, May 9, 2019 – James Kimmelman v. Wayne Insurance Group, Case no. 18 CV 1041, Franklin County Court of Common Pleas
- Expert Report, July 5, 2019 – James Kimmelman v. Wayne Insurance Group, Case no. 18 CV 1041, Franklin County Court of Common Pleas
- Expert Report – Regarding the Proper Characterization of Bitcoin for Purposes of Insurance Coverage, July 5, 2019 – James Kimmelman v. Wayne Insurance Group, Case no. 18 CV 1041, Franklin County Court of Common Pleas
- Expert Report – Reserve Wallet Forensic Analysis - July 22, 2019 – Temurian v. Piccolo, Case No. 18-CV-62737-BLOOM/Valle, United States District Court, S.D. Florida
- Expert Report – Initial Forensic Analysis of Computers for Bitcoin Usage, August 6, 2019 – James Kimmelman v. Wayne Insurance Group, Case no. 18 CV 1041, Franklin County Court of Common Pleas

**Publications**

- Anatomy of a Cryptocurrency Pyramid Scheme. Compliance Week. April 1, 2019
- Privacy & Regulatory Considerations in Enterprise Blockchain. Dark Reading. April 3, 2019
- How to start implementing blockchain for enterprise. Tech HQ. April 26, 2019
- Practical Enterprise Blockchain: How to Apply and Adopt. Information Week. April 30, 2019
- How Blockchain Can Transform Preventative Care. Managed Healthcare Executive. May 12, 2019
- Opportunities for New Efficiencies and Revenue Models in Enterprise Blockchain. CIO Review. June 10, 2019
- Blockchain Is Much More than Cryptocurrency. Corporate Council Business Journal (CCBJ). July 11, 2019

**Professional Presentations and Speaking Engagements**

- Transparency and Compliance: Blockchain Supported Regulatory Alignment. March 19, 2019
- Uses for Blockchain Technology - A Roundtable Discussion. April 2, 2019
- Introduction to Blockchain: What Every Privacy and Security Professional Needs to Know. April 11, 2019
- Privacy, Cybersecurity and Data Control Best Practices for the ABAC/Global Trade Executive; What You Need to Know As A Non-Privacy Expert Operating In Today's Global Business Environment.   May 1, 2019
- An Introduction to Blockchain. May 2, 2019
- Blockchain & Cryptocurrency: Corporate Opportunities and Regulatory Considerations. June 12, 2019

**Employment History**

- November 2018 – Present: FTI Consulting – Technology Segment, Houston, TX, Senior Managing Director
- September 2017 – November 2018: Grant Thornton LLP, Houston TX, Managing Director
- December 2010 – August 2017: Navigant Consulting, Managing Director and Global Strategic Market Development Leader
- November 2009 – November 2010: Flex Discovery Solutions, President and Founder



**Steve McNew**
**Senior Managing Director – Technology Segment**

- January 2009 – November 2009: Huron Consulting Group, Managing Director
- March 1998 – May 2008: LIT Group, Inc./RLS Legal Solutions/DigIT Technologies, President
- May 1998 – October 2007: LIT Group, Inc./DigIT Technologies, President
- February 1996 – May 1998: IKON Document Services, General Manager
- 1994 – 1995: Quorum Litigation Services, General Manager
- 1987 – 1994: Arthur Andersen, Senior Manager

**Education**

- Business Management and Computer Sciences, Northern Kentucky University
- Blockchain and Cryptocurrency Executive Education Certificate, Massachusetts Institute of Technology (MIT)

