UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ANTHONY FASULO and GAUTAM DESAI,

                  Plaintiffs,                        Case No. 19-cv-03741 (PKC)

vs.

XTRADE DIGITAL ASSETS INC., XTRADE DIGITAL
HOLDINGS, ALEXANDER KRAVETS, SERGII
GULKO, and JON GIACOBBE

                  Defendants.
----------------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

KAGEN & CASPERSEN PLLC
Joel M. Taylor, Esq.
Stuart Kagen, Esq.
757 Third Avenue, 20th Floor
New York, NY 10017
*Attorneys for Defendants*

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1
I. PLAINTIFFS LACK ARTICLE III STANDING ............................................................. 1
II. COUNT I MUST BE DISMISSED ................................................................................... 2
   A. Loss Causation Is Not Plausibly Alleged ...................................................................... 3
   B. Plaintiffs Are Not Entitled To A Presumption Of Reliance .......................................... 4
   C. The SAC Does Not Allege Facts Giving Rise To An Inference Of Scienter ................. 5
   D. The SAC Does Not Plausibly Allege Falsity ................................................................ 6
      1. Statements About Whether The Tokens Would Be Securities ................................... 6
      2. Statements About Xtrade's Alleged Plan To Offer Market Making Services ............. 8
      3. Omission Of XTrade's Allege Plan To List Tokens On Exchanges ........................... 9
III. COUNT III SHOULD BE DISMISSED ........................................................................... 9
   A. Plaintiffs' Section 12(a)(1) Claim Is Time Barred ......................................................... 9
   B. The SAC Fails To Unequivocally Demand Rescission ............................................... 10
CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. U.S.*,
   406 U.S. 128 (1972) .................................................................................................. 4, 5
*Athas v. Day*,
   186 F.Supp. 385 (D. Col. 1960 ....................................................................................... 1
*Balestra v. ATBCOIN LLC*,
   2019 WL 1437160 (S.D.N.Y. March 31, 2019) .............................................................. 7
*Bryant v. Uland*,
   327 F.Supp. 439 (S.D. Texas 1971) ................................................................................ 1
*Cortlandt St. Recovery Corp. v. Deutsche Bank AG*,
   2013 U.S. Dist LEXIS 100741 (S.D.N.Y. July 18, 2013) ............................................... 1
*De Oliveira v. Bessemer Trust Co., N.A.*,
   2010 WL 1253173 (S.D.N.Y. 2010) ............................................................................... 6
*Dubin v. E.F. Hutton Group, Inc.*,
   1990 WL 105757 (S.D.N.Y. 1990) ................................................................................. 9
*Erikson v. Galvin*,
   484 F.Supp. 1108 (S.D.N.Y. 1980) ........................................................................... 9, 10
*Fogel v. Vega*,
   759 Fed. Appx. 18 (2d Cir. 2018 ............................................................................ 5, 6, 9
*Gissin v. Endres*,
   739 F.Supp.2d 488 (S.D.N.Y. 2017) ............................................................................... 6
*Holden v. Hagopian*,
   978 F.2d 1115 (9th Cir. 1992) ......................................................................................... 8
*In re China Mobile Games & Entertainment Group, Ltd.*,
   2016 WL 92271 (S.D.N.Y. 2016) ................................................................................... 5
*Indemnity Ins. Co. of North America v. Expeditors International of Washington, Inc.*,
   2019 WL 2225750 (S.D.N.Y. 2019) ............................................................................... 1
*Jones Real Estate, Inc. v. Avatel Techs., Inc.*,
   2019 U.S. Dist. LEXIS 39693 (S.D.N.Y. March 12, 2019) ............................................ 2
*Katz v. Amos*,
   411 F.2d 1046 (2d Cir. 1969) ........................................................................................ 10
*Lavery v. Kearns*,
   792 F.Supp. 847 (D. Maine 1992) .................................................................................. 8
*Marine Bank v. Weaver*,
   455 U.S. 551 (1982) ........................................................................................................ 8
*Micholle v. Ophthotech Corp.*,
   2019 U.S. Dist. LEXIS 160131 (S.D.N.Y. Sept. 18, 2019) ............................................ 9

*Rensel v. Centra Tech, Inc.*,
  2018 WL 4410126 (S.D. Fla. June 25, 2018) ............................................................................. 7
*Rochambeau v. Brent Exploration, Inc.*,
  79 F.R.D. 381 (D. Col. 1978) ................................................................................................. 10
*Ross v. Lloyds Banking Group, PLC*,
  2012 WL 4891759 (S.D.N.Y. 2012) ....................................................................................... 10
*Salvani v. ADVFN PLC*,
  50 F.Supp.3d 459 (S.D.N.Y. 2014) .......................................................................................... 5
*Slack v. Stiner*,
  358 F.2d 65 (5th Cir. 1966) ...................................................................................................... 1
*U.S. v. Zaslavskiy*,
  2018 WL 4346339 (E.D.N.Y. 2018) ........................................................................................ 7

**Statutes and Rules**

15 U.S.C. §77b(2)(11) ..................................................................................................................... 1
15 U.S.C. §77l(a)(1) ................................................................................................................... 7, 9
15 U.S.C. §78u-4(b)(1) ................................................................................................................... 9
15 U.S.C. §78u-4(b)(2) ................................................................................................................... 5
Fed. R. Civ. P. 9 (b) ..................................................................................................................... 11
Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 1
Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4
Securities and Exchange Act of 1934 §10(b) ...................................................................... 1, 3, 5, 9

## ARGUMENT

### I.  PLAINTIFFS LACK ARTICLE III STANDING

The "party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Indemnity Ins. Co. of North America v. Expeditors International of Washington, Inc.*, 2019 WL 2225750 at *1 (S.D.N.Y. 2019). Plaintiffs each submit an affidavit testifying that (i) he purchased for himself "a number" of tokens as to which he has "always been in total ownership", and that (ii) he is "currently" the "title holder" of all tokens purchased under his respective SAFT/s. (Desai & Fasulo Decls. ¶¶ 1 & 3). Those averments are not sufficient to prove standing, save possibly to assert a §10(b) claim with respect to the tokens they claim to have always owned.

As to those tokens Plaintiffs admit they have not always owned, standing is lacking absent proof, of which they proffer none, that the prior owners assigned "*title* to or *ownership* of the *claims*" asserted in the SAC. *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, 2013 U.S. Dist LEXIS 100741 at *9 (S.D.N.Y. July 18, 2013) (emphasis in original) (granting 12(b)(1) motion where note assignment did not expressly convey title or property interest in claims).

As to those tokens that Plaintiffs say they always owned, standing to assert §12 claims is lacking because no cause of action is given under the Securities Act to a party that acted as an underwriter – that is, one who purchases a security from an issuer with a view to distribution. 15 U.S.C. §77b(2)(11); *Slack v. Stiner*, 358 F.2d 65, 70 (5th Cir. 1966) ("The cause of action under the Securities Act is given to those purchasers who are not underwriters or dealers.").[1] The preponderance of evidence shows that both Plaintiffs acted as underwriters. Neither deny that he

---

[1] See also *Bryant v. Uland*, 327 F.Supp. 439, 448 (S.D. Texas 1971) (underwriter "could not seek the protections of the Securities Act"); *Athas v. Day*, 186 F.Supp. 385, 387-89 (D. Col. 1960) (same, where underwriter personally purchased 6,000 shares of stock).

1

acted as a syndicator. Indeed, both admit that he purchased only "a number" of tokens for himself and that he has not "always been in total ownership" of all tokens sold under his respective SAFT/s. This admission, coupled with the broad distribution of the tokens documented in the McNew Declaration, is convincing evidence that Plaintiffs purchased the tokens with a view to distribution.

## II.  COUNT I MUST BE DISMISSED

Defendants implicitly abandon most of their §10b claims by failing to respond to arguments for their dismissal. *Jones Real Estate, Inc. v. Avatel Techs., Inc.*, 2019 U.S. Dist. LEXIS 39693 at *20 (S.D.N.Y. March 12, 2019) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). That abandonment is detailed below:

| Argument | Response |
|---|---|
| Statements about whether the tokens would be securities<br>The SAC does not plausibly allege:<br>• That Risk Factor 15 was misleading. Op.Br. §II(A)(1)(b);<br>• Facts giving rise to a strong inference Defendants knew or should have known the tokens would be securities. Op.Br. §II(A)(2);<br>• Plaintiffs reasonably relied on the statements. Op.Br. §II(A)(3);<br>• Loss causation. Op.Br. §II(A)(4). | None<br>Conceded<br><br>Conceded<br>Conceded |
| Statement that Xtrade obtained opinion letter that the tokens are not securities<br>The SAC does not plausibly allege:<br>• The falsity of the statement. Op.Br. §II(A) & n.8;<br>• Plaintiffs reasonably relied on the statement. Op.Br. §II(A) & n.8;<br>• Loss causation. Op.Br. §II(A) & n.8. | None<br>Conceded<br>Conceded |
| Statements about Xtrade's alleged plan to sell tokens to the U.S public<br>The SAC does not plausibly allege:<br>• Who, when or where the statement was allegedly made; allegation is contradicted by documents cited in the SAC. Op.Br. §II(C) *First-Third*;<br>• Plaintiffs relied on the statements. Op.Br. §II(C) *Fourth*;<br>• Loss causation. Op.Br. §II(C) *Fifth*;<br>• That cautionary statements contained in the White Paper were not sufficiently specific for the PSLRA safe harbor for forward looking statements to apply. Op.Br.§II(C) *Sixth*. | None<br><br><br>Conceded<br>Conceded<br>None |

| | |
|---|---|
| Statements about Xtrade's plans to ensure regulatory compliance<br>The SAC does not plausibly allege:<br>• The statement is anything other than puffery. Op.Br. §II(E) *First*;<br>• That cautionary statements contained in the SAFT were not sufficiently specific for the PSLRA safe harbor for forward looking statements to apply. Op.Br. §II(E) *Second;*<br>• Facts giving rise to a strong inference that Defendants actually knew that the statement was false. Op.Br. §II(E) *Second;*<br>• Plaintiffs relied on the statements. Op.Br. §II(E) *Third*;<br>• Loss causation. Op.Br. §II(E) *Fourth*. | None<br>None<br><br><br>Conceded<br><br>Conceded<br>Conceded |
| Statements about the SAFT's compliance with securities laws<br>The SAC does not plausibly allege:<br>• The falsity of the statement. Op.Br. §II(F) *First;*<br>• Facts giving rise to a strong inference that Defendants knew the statement was false. Op.Br. §II(F) *Second;*<br>• Plaintiffs relied on the statement. Op.Br. §II(F) *Third;*<br>• Loss causation. (Point II(F) *Fourth*). | <br><br>None<br>Conceded<br><br>Conceded<br>Conceded |
| Statements about Kravets' background<br>The SAC does not plausibly allege:<br>• Facts giving rise to a strong inference that Defendants intended to deceive Defendants. Op.Br. §II(G);<br>• Plaintiffs relied on the statements. Op.Br. §II(G);<br>• Loss causation with respect to those statements. Op.Br. §II(G). | <br><br>Conceded<br><br>Conceded<br>Conceded |
| Statements about the Chicago Mercantile Exchange<br>The SAC does not plausibly allege:<br>• Facts giving rise to a strong inference that Defendants intended to deceive Defendants. Op.Br. §II (H);<br>• Plaintiffs relied on those statements. Op.Br. §II(H);<br>• Loss causation. Op.Br. §II(H). | <br><br>Conceded<br><br>Conceded<br>Conceded |

The only bases for the §10(b) claim that Defendants do not abandon are those relating to (i) statements about Xtrade's alleged plan to provide market making services, and (ii) Defendants' supposed failure to disclose that Xtrade would allow tokens to be listed and/or sold on foreign exchanges. As discussed below, those claims are meritless.

### A. Loss Causation Is Not Plausibly Alleged

Plaintiffs argue (at 18-20) that their entire loss were caused by Xtrade (i) allegedly abandoning its "advertised" plan to provide market making services, and (iii) allegedly allowing

3

the tokens to be listed or sold on public exchanges after "first claiming that the token was not going to be traded on an exchange". As noted in the above catalogue, the SAC does not plead loss causation with respect to any other alleged misrepresentation or omission.[2]

Plaintiffs do not dispute that settled law holds that when a plaintiff's loss coincides with a market wide phenomenon causing comparable losses the plaintiff must allege facts that would allow a factfinder to ascribe some rough proportion of the whole loss to the alleged misstatements. See Op.Br. §II(B)(3). Nor do they dispute that in such circumstances an allegation that the entire loss was caused by the alleged misrepresentation is insufficiently plausible to withstand a motion to dismiss. Id.

Plaintiffs try to avoid dismissal by asserting (at 19) that "the cryptocurrency market has substantially recovered" in 2019 while the Tokens "remain worthless". As support for the first of these claims Plaintiff cite (at 19 & n.2) only the trading price of Bitcoin. But, as is evident from the MVIS CryptoCompare Digital Asset 10 Index, which tracks the performance of the 10 largest and most liquid digital assets, even this most robust segment of the cryptocurrency market experienced a steep and continuous decline throughout 2018 and, as of October 1, 2019, is still only marginally higher than its December 2018 trough. Taylor Reply Decl. Ex. 1. As noted in our opening brief (at n.3& §II(B)(3)), courts routinely take judicial notice of market phenomena such as an economic downturn or a market collapse in granting a 12(b)(6) motion.

### B.  Plaintiffs Are Not Entitled To A Presumption Of Reliance

Plaintiffs argue that they are entitled to a presumption of reliance under the fraud-on-the-market and *Affiliated Ute* doctrines. That is incorrect. "To rely on the fraud on the market doctrine,

---

[2] Defendants abandon their allegation that the value of the token "collapsed" when Xtrade supposedly announced that it would not sell tokens to the general U.S. public. (SAC ¶17). As noted in our opening brief (§II(C) *Fifth* (iii)), this allegation directly contradicts the SAC's allegation, on which Plaintiffs still stand, that the tokens declined in value because Xtrade allegedly caused them to be listed for sale to the public on Idex and Coinsuper.

4

a plaintiff must plead that the market on which he purchased his shares was efficient." *Salvani v. ADVFN PLC*, 50 F.Supp.3d 459, 471 (S.D.N.Y. 2014). The SAC includes no such allegation. To the contrary, the SAC alleges (at ¶¶ 94, 101, 143) Plaintiffs purchased the tokens directly from Xtrade and that tokens did not even trade on an exchange until seven months later.

The *Affiliated Ute* presumption is applicable only to claims "involving primarily a failure to disclose". *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153 (1972). Plaintiffs identify (at 13-14) only two claims alleging such a failure: (a) failure to disclose that Xtrade could not provide the market making services it allegedly advertised; and (b) failure to disclose that Xtrade would allow the tokens to be listed/sold on public exchanges. Plaintiffs are not entitled to a presumption of reliance with respect to their other claims. And, as noted in the above schedule, the SAC does not allege reliance on any other statements.[3]

### C. The SAC Does Not Allege Facts Giving Rise To An Inference Of Scienter

The PSLRA requires that a complaint "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re China Mobile Games & Entertainment Group, Ltd.*, 2016 WL 92271 at *6 (S.D.N.Y. 2016) (Castel, J) (quoting 15 U.S.C. § 78u-4(b)(2)). As noted in the above catalogue, the SAC does not do so with respect to most of Plaintiffs' claims. Instead, Plaintiffs argue that, when assessed "holistically", the SAC adequately pleads scienter because it alleges motive and opportunity to commit fraud and strong circumstantial evidence of conscious misbehavior or recklessness. That is incorrect.

"[G]eneralized allegations of scienter against groups of defendants will not state a claim

---

[3] Plaintiffs assert (at 15 & 18) that Plaintiffs relied on various other statements allegedly made by Defendants. This assertion cannot cure the deficiency in pleading. *Fogel v. Vega*, 759 Fed. Appx. 18, 24 (2d Cir. 2018) (declining to consider §10(b) allegation made in brief but not complaint).

5

for securities fraud." *Gissin v. Endres*, 739 F.Supp.2d 488, 512-13 (S.D.N.Y. 2017) (an "individualized motive" must be pled). A complaint must allege that defendants "benefitted in some concrete and personal way from the purported fraud." *De Oliveira v. Bessemer Trust Co., N.A.*, 2010 WL 1253173 at *4 (S.D.N.Y. 2010) (Castel, J.). Here, the SAC is bereft of any allegation of either individualized motive or concrete and personal benefit.[4] Plaintiffs' unpled assertion in their brief (at 17) that "Defendants knew or had reason to know they could make money" does not, and cannot, cure these deficiencies. *Fogel*, 759 Fed. Appx. at 24.

Plaintiffs vaguely assert (at 17), without citation, that the "SAC makes numerous specific references to circumstances indicating conscious misbehavior or recklessness". In this regard, the SAC alleges (at ¶¶46-47) that Defendants knew or should have known, based on public statements by the SEC, that the tokens would be securities and that Xtrade was unlikely to obtain regulatory approvals needed to implement its business plan. But, as shown (Op.Br. §II(A)(2)), the substance of the 21(a) Report – the only SEC statement Defendants are alleged to have had knowledge – does not give rise to an inference of scienter. And, as also shown (at §II(B)(2)(c)), the SAC does not allege particularized facts supporting its allegation – a bare legal conclusion – that Xtrade needed to obtain certain regulatory approvals to implement its business plan.

### D. The SAC Does Not Plausibly Allege Falsity

#### 1. Statements About Whether The Tokens Would Be Securities

As shown in our opening brief, the SAC does not allege facts showing either that (i) the tokens do not have those characteristics that are usually associated with "currency" – a type of instrument excluded from the statutory definition of "security", or that (ii) a reasonable investor

---

[4] Where a defendant, like Xtrade, is a corporate entity, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Id.*

6

would have been led to expect profits from their purchase of the tokens – an essential characteristic of an "investment contract". See Op.Br. §II(A)(1)(a).

In response, Plaintiffs cite (at 11) three inapposite cases examining whether a pleading adequately alleged that the particular digital asset at issue was an investment contract. Each is cases easily distinguished. In *Rensel v. Centra Tech, Inc.* defendants "conceded" that the instrument was a security. 2018 WL 4410126 at *4 (S.D. Fla. June 25, 2018). In *Balestra v. ATBCOIN LLC*, defendant issued a press release stating that its "investors are serious people . . . interested in . . . profit" and that "participants finance the development of the company not in order to get revenue from it in the future". 2019 WL 1437160 at *8 (S.D.N.Y. March 31, 2019). In *U.S. v. Zaslavskiy*, defendant's offering materials described the instrument as "an attractive investment opportunity" which "grows in value" and which has "some of the highest potential returns". 2018 WL 4346339 at *6-7 (E.D.N.Y. 2018). In contrast, here, as discussed (Op.Br. §II(A)(1)(a)(ii)), the White Paper is completely barren of any representation that could have led a reasonable investor.[5]

In *Zalavskiy* the court also rejected defendants argument that the tokens were currency because the indictment alleged that no "coins, tokens, or currency of any imaginable sort, ever existed". Here, it is undisputed that Xtrade did deliver tokens. The *Zalavskiy* court also found that defendant "overlook[ed] the fact that simply labeling an investment opportunity as 'virtual currency' or 'cryptocurrency' does not transform an investment contract – a security – into a currency." *Id.* But, as discussed in our opening brief (at 9-12), that analysis reverses the proper

---

[5] Plaintiffs repeat in their brief (at 4) the allegation (at SAC ¶3) that Defendants' "pitch was that investors would purchase the tokens . . . at a substantial discount to an intended issuance price, and be able to resell them at that issuance price or better." But they do not respond either (i) to our showing that this allegation is contradicted by the White Paper and two subsequent public announcements by Xtrade (both incorporated by reference in the SAC) which state that Xtrade would, only "if necessary", sell tokens in a "crowd sale" to "accredited investors under Reg D and non-US investors under Reg S", or to (ii) are argument that the allegation is not pled with the requisite particularity – failing to identify the who, when or where of the supposed "pitch". Op.Br. §§II(C) *First-Third*.

7

order of operation. A court must first determine if an instrument has the characteristics of one of the types of instrument listed in the definition of security, and only if the answer is "no", then assess if it is an investment contract.

Plaintiffs also argue (at 12) that the tokens may, on a post hoc basis, be deemed to be securities based on the alleged facts that (i) the tokens traded on Idex and Coinsuper, and that (ii) when delivered the tokens did not provide access to a functioning platform, giving them no purpose other than speculation. That is incorrect. An instrument's status, as a security or not, is determined as of the time sale, not based on subsequent events. See *Holden v. Hagopian*, 978 F.2d 1115, 1121 & n. 10 (9th Cir. 1992) (determination made "at the time of the investment" not based on "post-investment conduct"); *Marine Bank v. Weaver*, 455 U.S. 551, 559 n. 9 (1982) (rejecting argument that certificate of deposit "was somehow transformed into a security when it was pledged, even though it was not a security when purchased"); *Lavery v. Kearns*, 792 F.Supp. 847, 855 (D. Maine 1992) ("transaction must be characterized at its inception, not as it develops, for registration of securities must occur before their sale"; citing *Joinder Leasing*).

### 2. Statements About Xtrade's Alleged Plan To Offer Market Making Services

As shown (Op. Br. §II(B)(1)), Plaintiffs' allegation (belied by its misleading use of ellipses) that Defendants represented that Xtrade would provide market making services to token holders is contradicted by the White Paper. Plaintiffs do not argue otherwise. Separately, we showed (at §II(B)(2)) that even if such a statement had been made it would fall squarely within the PSLRA safe harbor for forward looking statements. The SAFTs contain meaningful cautionary statements and the SAC does not plausibly allege that Defendants had actual knowledge that Xtrade would be unable to provide such services.

8

### 3. Omission Of XTrade's Allege Plan To List Tokens On Exchanges

The SAC does not, as required by the PSLRA, specify a statement rendered misleading as a result of Defendants' alleged failure to disclose that Xtrade might allow the tokens to be listed or sold on an exchange. (Op.Br. §II(D) *First*). Plaintiffs' assertion (at 15) that this alleged non-disclosure rendered misleading Defendants' statement that the tokens would not be securities cannot cure this pleading deficiency. *Fogel*, 759 Fed.Appx. at 24. Moreover, as shown (Op.Br. §II(D)), even if that unpled allegation is considered, the claim fails because (i) the White Paper did disclose that "the tokens . . . may also potentially trade on secondary markets at some point in the future", and because (ii) the allegation that Defendants caused tokens to be listed and/or sold on Idex and Coinsuper is pled on information and belief without stating with particularity facts upon which that belief is formed. *Micholle v. Ophthotech Corp.*, 2019 U.S. Dist. LEXIS 160131 at *27 (S.D.N.Y. Sept. 18, 2019) (dismissing §10(b) claim; citing PSLRA §78u-4(b)(1)).

## III. COUNT III SHOULD BE DISMISSED

### A. Plaintiffs' Section 12(a)(1) Claim Is Time Barred

Plaintiffs argue (at 21-22) that their §12 claim is not time barred because: (a) the tokens were delivered less than one year before suit was brought, and because (b) the SAC alleges that Defendants engaged in a "continuous offering" of tokens. Neither argument is persuasive.

Section 12(a)(1) creates a private right of action only as against a "person who . . . *offers or sells* a security in violation of" §5. (15 U.S.C. §77l(a)(1)) (emphasis added). Tracking the statutory language, the SAC alleges only that the offer and sale of the tokens violated §5. (SAC ¶¶175-76, 185). Even if the SAC could be read otherwisee, where both the "sale" and "delivery after sale" of an unregistered security are alleged to violate §5, the "statute of limitations [is] triggered by [the] first violation". *Dubin v. E.F. Hutton Group, Inc.*, 1990 WL 105757 at *3 & n.3 (S.D.N.Y. 1990) (citing *Erikson v. Galvin*, 484 F.Supp. 1108, 1119 (S.D.N.Y. 1980): "The

9

violation which commences the running of the statute must be the first violation." (quote marks omitted)). While "delivery after sale" of an unregistered security "can provide an element necessary to the application of federal power when none had existed before . . . a delay in mailing [a stock certificate] does not extend the period of limitations". *Katz v. Amos*, 411 F.2d 1046 & n. 7 (2d Cir. 1969). Plaintiffs do not dispute that the sale of the tokens occurred outside the limitations period.

For this same reason, courts have rejected the argument that a "continuing violation" of Section 5 extends the limitations period. See e.g. *Rochambeau v. Brent Exploration, Inc.*, 79 F.R.D. 381, 384 (D. Col. 1978) (limitations period begins to run when "the rights and obligations of the parties were fixed by . . . agreement and were thereafter governed by that agreement, no matter what course of action either chose to take"; cited in *Erikson*). The statutory language of the Securities Act does not indicate any intent to create a continuing offense and Plaintiffs cite no case in which a court has ever found there to be one.

Even if the limitations period is extended under either theory, §12 is inapplicable because, as discussed, the SAC does not adequately allege the tokens are securities.

### B. The SAC Fails To Unequivocally Demand Rescission

As shown (Op. Br. §III(B)), a claim for rescission under §12 is not adequately pled if it seeks damages in the alternative. Plaintiffs do not dispute that Count III seeks both rescission and damages. (SAC ¶185: "all Defendants . . . are liable to Plaintiffs for rescission and/or compensatory damages"). An equivocal statement of this kind, which seeks to preserve a damages claim, "is not an adequate demand for rescission which will satisfy Section 12." *Id.*

### CONCLUSION

The SAC should be dismissed in its entirety with prejudice. *Ross v. Lloyds Banking Group,*

10

*PLC*, 2012 WL 4891759 at *12 (S.D.N.Y. 2012) (Castel, J) (dismissal with prejudice for failure to satisfy pleading requirements of Rule 9(b) and PSLRA where plaintiff already had one opportunity to plead with greater specificity), *aff'd* 546 Fed. Appx. 5 (2d Cir. 2013).

Dated: New York, New York
October 7, 2019

                                  KAGEN & CASPERSEN PLLC

                                  By:    s/ Joel Taylor
                                        Joel M. Taylor, Esq.
                                        Stuart Kagen, Esq.
                                        757 Third Avenue, 20th Floor
                                        New York, NY 10017
                                        *Attorneys for Defendants*